UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| S. L. J. a minor by his mother, ROCHELLE TOLDEN, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| vs. | )<br>) |
| | )    No. 1:12-cv-00606-MJD-WTL |
| CAROLYN W. COLVIN Acting Commissioner of the Social Security Administration, | )<br>)<br>)<br>) |
| Defendant. | ) |

**ENTRY ON JUDICIAL REVIEW**

Claimant S.L.J., a minor, by his mother Rochelle Tolden, requests judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("the Act"), 42 U.S.C. § 1382.[1]  For the reasons set forth below, the decision of the Commissioner is **AFFIRMED**.

## I.    Procedural History

On March 2, 2007, Tolden filed an application for SSI on behalf of S.L.J., a child under age eighteen, alleging a disability onset date of October 7, 1999. The application was denied initially on May 30, 2007 and on reconsideration on July 24, 2007. Tolden requested a hearing which was held on August 24, 2009 before Administrative Law Judge Deborah Arnold ("ALJ"). The ALJ denied the application on November 10, 2009. On March 24, 2012, the Appeals

---

[1] The parties consented to the magistrate judge conducting all proceedings and ordering the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73.

Council denied Tolden's request for review, making the ALJ's decision the final decision for purposes of judicial review. This action was filed with this Court on May 7, 2012.

## II.     Factual Background and Medical History[2]

S.L.J. ("the Claimant") is a minor born on October 7, 1999. In February 2007, the Claimant received a Speech and Language Evaluation from speech language pathologist Erin Horrigan, M.S., CCC-SLP with the Disability Determination Bureau ("state agency"). Ms. Horrigan described the Claimant as compliant with appropriate attention to task. She also found that he displayed mildly delayed receptive language skills and moderately delayed expressive language skills.

In May 2007, the Claimant also received a psychological evaluation from clinical psychologist Jerome Modlik, Psy.D., also with the state agency. At the time, the Claimant was in the first grade. The claimant was referred for Attention Deficit/Hyperactivity Disorder ("ADHD") and emotional handicap. The Claimant indicated to Dr. Modlik that math was his easiest subject. Dr. Modlik found that the Claimant's functioning is in the low average to borderline range of intelligence. He also found that he is able to read at a beginning first grade level. Dr. Modlik diagnosed the Claimant with Borderline Intellectual Functioning ("BIF").

Also in May 2007, state agency physician Donna Unversaw, Ph.D. along with speech language pathologist J. Hoke, CCC-SLP completed a Childhood Disability Evaluation Form. They found the Claimant's impairments to be mild language delay and Borderline Intellectual Functioning. They also indicated that these impairments or combination of impairments is severe, but does not meet, medically equal, or functionally equal the listings. When evaluated for

---

[2] Although the record contains evidence through 2011, the facts are limited to evidence related to the period on or before the date of the ALJ hearing decision which was November 10, 2009. The court is not permitted to consider additional evidence submitted relating to a period after the ALJ's hearing decision. *See* 20 C.F.R. 416.1470; *Schmidt v. Barnhart*, 395 F.3d 737, 741-42 (7th Cir. 2005).

functional equivalence, the state agency examiners indicated that the Claimant had less than marked limitations in acquiring and using information, less than marked limitations in attending and completing tasks, no limitation in interacting and relating with others, no limitation in moving and manipulating objects, no limitation in caring for yourself, and no limitation in health and physical well-being. They based their opinions on Ms. Horrigan and Dr. Modlik's evaluations as well as a report from the Claimant's first grade teacher. State agency physician J. Gange, Ph.D. and speech language pathologist M. Thomas, CCC-SLP affirmed this evaluation in July 2007.

In July 2007, the Claimant sought treatment from Gallahue Mental Health Services ("Gallahue") for problems with social skills and concentration. The Claimant's mother also reported that he had increased hyperactivity and outbursts of aggression as well as episodes of repeatedly banging his head against the wall and rocking. He was diagnosed with ADHD, BIF, and rule out autism. The Claimant was discharged from care from Gallahue in October 2008 and referred to another agency to be treated by an autism specialist.

Also included in the record are special education reports from the Claimant's schools completed by the Claimant's teachers, principal, special education teacher, and school psychologists. The Claimant was evaluated for special education in 2008 when the Claimant was in the second grade. It was determined that the Claimant would attend general education classes with special education support citing autism as the primary disability.

The Special Education Department comprised of members from a Multidisciplinary Evaluation Team ("MET") completed a report in May 2008. The MET consisted of the principal, school psychologist, social worker, general education teacher and resource teacher. As part of the report, Claimant's mother and second grade teacher completed the Gilliam Autism Rating Scale-

2nd Edition ("GARS-2"). Tolden's scale indicated that the Claimant was very likely to have autism. The teacher's scale indicated only that the Claimant possibly had autism. The MET report indicated that the Claimant had borderline intellectual functioning and that he was performing at a first to second grade level. The Claimant's math skills showed he was performing at the appropriate second grade level. The report also indicated that the Claimant had some autistic features.

An Autistic Spectrum Disorder Evaluation was also completed by the special education teacher and the Claimant's second grade teacher in May 2008. The report indicated that the diagnostic criteria for autistic disorder were met. The findings were that the Claimant had qualitative impairment in social interaction as manifested by marked impairment in the use of multiple nonverbal behaviors, failure to develop peer relationships appropriate to development level, and lack of social or emotional reciprocity; qualitative impairments in communication as manifested by marked impairment in the ability to initiate or sustain conversation with others; and restricted repetitive and stereotyped patterns of behavior, interests, and activities as manifested by stereotyped and repetitive motor mannerisms. It is noted that the evaluation has a check box for "yes" or "no" on whether the report confirms the child in question meets eligibility for autism spectrum disorder, and neither of the boxes are checked.

### III.   Applicable Standard

An individual under the age of eighteen (a "child") is disabled if he "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). To satisfy this standard, a child must show that (1) he is not engaged in performing substantial

gainful activity; (2) he has a severe medically determinable impairment; and (3) his impairments meet, medically equal, or functionally equal a Listing found in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 416.924(a)-(d). At the third step of this evaluation, if a child's impairment does not meet or medically equal any Listing, the ALJ must determine whether the child's impairment functionally equals a Listing by considering how the child functions in six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting with and relating to other people; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b). "To find an impairment functionally equivalent to a [L]isting, an ALJ must ... find an 'extreme' limitation in one category or a 'marked' limitation in two categories." *Brindisi v. Barnhart,* 315 F.3d 783, 785 (7th Cir. 2003) (citing 20 C.F.R. § 416.926a(a)).

In reviewing the ALJ's decision, the ALJ's findings of fact are conclusive and must be upheld by this court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* This court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993). However, the "ALJ's decision must be based upon consideration of all the relevant evidence." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). In order to be affirmed, the ALJ must articulate her analysis of the evidence in her decision; while she "is not required to address every piece of evidence or testimony," she must "provide some glimpse into her

reasoning . . . [and] build an accurate and logical bridge from the evidence to her conclusion." *Dixon*, 270 F.3d at 1176.

### IV. ALJ's Decision

The ALJ determined that based on the claimant's date of birth of October 7, 1999, the claimant was a school-aged child on the date the application was filed and on the date of the decision. Applying the three-step analysis, the ALJ found at step one that the claimant had not engaged in substantial gainful activity since the application date. At step two, the ALJ found that the claimant had the following severe impairments: attention deficit hyperactivity disorder and borderline intellectual functioning with possible autism. At step three, the ALJ determined that the claimant did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. The ALJ also found that the claimant did not have an impairment or combination of impairments that functionally equals the listings. Analyzing the six domains, the ALJ found that the claimant had less than marked limitation in all six domains. Therefore, the ALJ determined that the claimant was not disabled.

### V. Discussion

The central issue in this matter is whether there is substantial evidence to support the ALJ's decision that the claimant was not disabled. The claimant raises three arguments on review: 1) substantial evidence does not support the ALJ's conclusion that the Claimant's impairments do not meet, medically equal, or functionally equal Listing 112.10; 2) the ALJ erred by failing to summon a medical expert on the issue of medical equivalency; and 3) the ALJ's

credibility determination is patently erroneous because it is contrary to Social Security Ruling 96-7p.

### A. Substantial evidence supports the ALJ's conclusion that the Claimant's impairments do not meet, medically equal, or functionally equal Listing 112.10.

The claimant first argues that the claimant's impairments meet, medically equal, or functionally equal Listing 112.10 Autistic Disorder. Listing 112.10 Autistic Disorder and Other Pervasive Developmental Disorders is

> Characterized by qualitative deficits in the development of reciprocal social interaction, in the development of verbal and nonverbal communication skills, and in imaginative activity. Often there is a markedly restricted repertoire of activities and interest, which frequently are stereotyped and repetitive.
> The required level of severity for these disorders is met when the requirements in both A and B are satisfied.
>
> A. Medically documented findings of the following:
>     1. For Autistic disorder, all of the following:
>         a. Qualitative deficits in the development of reciprocal social interaction; and
>         b. qualitative deficits in verbal and nonverbal communication and in imaginative activity; and
>         c. Markedly restricted repertoire of activities and interests;
> . . .
> AND
>
> B. [sic] for children (age 3 to attainment of age 18), resulting in at least two of the appropriate age-group criteria in paragraphs B2 of 112.02

20 C.F.R. Pt. 404 Subpt. P App. 1 Listing 112.10. The burden is on the plaintiff to show that his impairment(s) meet or equal all of a listing. *Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006). The Claimant, in this instance, has not met his burden. Plaintiff attempts to establish that his impairment meets or equals Listing 112.10 by directing the Court to an Autistic Spectrum Disorder Evaluation Summary Report. [R. 326-27, 330.] Admittedly, the diagnostic criteria for to establish autistic disorder bears a striking resemblance to the criteria listed in Listing 112.10.

While the Claimant is correct that the ALJ did not address this report in his decision, the error, if any, was harmless. First, this report was not completed by a medical source or expert. Instead, it was completed and signed off by the Claimant's special and general education teachers. Second, where the form asks the evaluator to indicate whether the Claimant meets eligibility for autism spectrum disorder, no box is checked. Third, the ALJ supported his conclusion by not only relying on the state agency physicians who indicated that the Claimant did not have an impairment that meets or equals the listings, but pointing to the state agency and teachers' observations to behavior that is not consistent with autism. For example, in the area of reciprocal social interaction, the ALJ discussed that the Claimant's first grade teacher found no problems with the Claimant's ability to interact with others; state agency examiner Ms. Horrigan noted that the Claimant displayed appropriate eye contact; and the Claimant had friends that he played video games with and volleyball. [R. at 25.] In the area of verbal and nonverbal communication and imaginative activity, the state agency physicians, in specifically reviewing for communicative function, noted that Claimant's limitation was less than marked.

Plaintiff does not point to any other evidence in the record that his impairments meet or medically equal Listing 112.10 and therefore has not met his burden. Thus, substantial evidence supports the ALJ's determination that the Claimant's impairment(s) do not meet or medically equal Listing 112.10.

Plaintiff's only argument with regard to functional equivalence is that the ALJ did not discuss the Claimant's GAF assessment of 45. The ALJ is not required to evaluate every piece of evidence. *Carlson*, 999 F.2d at 181. Even if the ALJ did err in failing to discuss the GAF assessment, nowhere in the regulations is it required that an ALJ base his decision entirely on a

person's GAF score. *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010). Therefore, substantial evidence supports the ALJ's determination on functional equivalence.

### B. The ALJ was not required to summon a medical expert.

Next, the Claimant argues that the ALJ was required to obtain an updated medical opinion on the issue of medical equivalency because the state agency physicians did not consider the evidence in the record submitted after the state agency review. An updated medical opinion is required when additional *medical* evidence is received that, in the opinion of the ALJ, could change the state agency physician's finding on the issue of medical equivalency. SSR 96-6p, 1996 WL 374180 (July 2, 1996) (emphasis added). The Claimant suggests that the treatment records from Gallahue and the Claimant's school evaluations warranted an updated medical opinion. The Court is not persuaded by this argument. The Claimant was never formally diagnosed with autism. The records from Gallahue indicate the possibility of autism and referred the Claimant to a specialist, but there is no diagnosis from any medical source in the record. The school psychologists' evaluation indicated that the Claimant had "autistic features," but never specifically diagnosed Claimant with autism. [R. at 323.] Although the school records indicated that Claimant's primary disability was autism, this is not medical evidence which warranted an updated medical opinion. Therefore, the ALJ was not required to consult an additional medical expert.

### C. Substantial evidence supports the ALJ's credibility determination.

Finally, the Claimant argues that the ALJ erred in her credibility determination, arguing that the ALJ never mentioned SSR 96-7p and failed to make any accurate findings concerning the seven factors in the Ruling. The only argument that the Claimant makes in support is the ALJ's failure to discuss the Claimant's GAF assessment. As discussed above, the ALJ did not err

9

in failing to discuss the GAF assessment. The remainder of Claimant's argument is waived as boilerplate language unsupported by record evidence typically found in counsel for the Plaintiff's briefs. *See United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991); *Firkins v. Astrue*, No. 1:09-cv-00923-JMS-TAB, 2010 WL 3037257, *4 (S.D. Ind. Aug. 3, 2010).

### VI.   CONCLUSION

For the reasons set forth above, substantial evidence supports the ALJ's determination that the Claimant is not disabled and the Commissioner's decision is **AFFIRMED**.

Date: 09/05/2013

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Patrick Harold Mulvany
patrick@mulvanylaw.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov